68718. REID et al. v. HARBIN LUMBER COMPANY OF ROYSTON, INC.
(323 SE2d 845)

McMURRAY, Chief Judge.

Plaintiff Harbin Lumber Company of Royston, Inc., brought suit against defendants, James E. Reid and Velma Faye Reid, in the Superior Court of Franklin County on February 25, 1982. The complaint alleged that plaintiff contracted with a building contractor, Mike Elli-

son, to furnish materials and supplies to improve the property of the defendants; that within three months of the last day on which any labor and materials were furnished on the real property, plaintiff recorded its claim of lien; that plaintiff was relieved from obtaining a judgment against Mike Ellison because he had filed a bankruptcy petition; that plaintiff was owed the sum of $9,911 for the materials and supplies; that plaintiff fully performed its contract by furnishing the materials and supplies to improve the defendants' real estate; and that the action was commenced against defendants within 12 months from the time the debt became due. Plaintiff sought a general judgment against defendants establishing the amount due and a special lien on the real property of the defendants. In their answer, defendants denied the material allegations of the complaint.

The case proceeded to trial and, following the return of a $9,000 verdict in favor of the plaintiff, a judgment was entered establishing a special lien upon the defendants' real property in the amount of $9,000. Thereafter, defendants filed a motion for new trial and a motion for judgment notwithstanding the verdict. The motions were overruled and defendants appealed. *Held*:

In their enumeration of errors, defendants assert the trial court erred by (1) failing to grant their motion for new trial and motion for judgment notwithstanding the verdict, (2) overruling their motion for a mistrial, and (3) striking certain testimony from the record.

1. With regard to the first enumeration of errors, defendants contend they are entitled to prevail in this action because plaintiff was not relieved from obtaining a judgment against Mike Ellison, the contractor. Ellison filed a Chapter 7 bankruptcy petition on November 23, 1981. Thereafter, several of Ellison's creditors, including the plaintiff, objected to Ellison's discharge in bankruptcy. Following a hearing, the bankruptcy court entered an order, on February 18, 1983, decreeing "that the discharge in bankruptcy of Mike Ellison, d/b/a Ellison Builders, a/k/a Mike Ellison Construction, . . . be and hereby is denied." Defendants contend that since Ellison was not discharged in bankruptcy, he was not adjudicated a bankrupt and that, therefore, it was incumbent upon plaintiff to obtain a judgment against Ellison in order to enforce the materialman's lien. We disagree.

Former OCGA § 44-14-362 (4), effective November 1, 1982, now OCGA § 44-14-361.1 (a) (4), effective July 1, 1983, provides, in pertinent part: "[I]f the contractor or subcontractor shall be adjudicated a bankrupt, or if, after the filing of an action, no final judgment can be obtained against him for the value of such material, services, labor or supplies because of his death or adjudication in bankruptcy, then and in any of these events, the person or persons furnishing material, services, labor, and supplies shall be relieved of the necessity of filing an action or obtaining judgment against the contractor or subcontractor

as a prerequisite to enforcing a lien against the property improved by the contractor or subcontractor." (Similar language was contained in former Code Ann. § 67-2002.) Thus, pursuant to former OCGA § 44-14-362 (4), now OCGA § 44-14-361.1 (a) (4), a materialman is excused from obtaining a judgment against a contractor who has been adjudicated a bankrupt. Was the materialman excused from obtaining a judgment against the contractor in the case sub judice?

Section 301 of the Bankruptcy Code (11 USCA § 301) sets forth the procedure for initiating a voluntary case under the operative chapters of the Code, including Chapter 7. It provides that the filing of a petition constitutes an "order for relief" under the chapter pursuant to which the petition was filed. Previously, the Bankruptcy Act provided that the filing of a petition constituted an automatic "adjudication" of bankruptcy. Section 18 (f) of the Bankruptcy Act (73 Stat. 109 (1959)). The term "order for relief" was inserted into the new bankruptcy code, however, in lieu of the word "adjudication." Thus, the word "adjudication" no longer appears in bankruptcy law. Collier on Bankruptcy, ¶ 102.07 (15th ed.). But it must be observed that: "This change in the language in itself creates no change in the rights of the parties. Section 1 (2) of the prior Act defined 'adjudication' to mean 'a determination, whether by decree or by operation of law, that a person is a bankrupt.' Section 18 (f) of the Act adopted a plan of automatic adjudication by providing that the filing of a voluntary petition in ordinary bankruptcy operated as an adjudication with the same effect as a decree of adjudication. The same result is carried over under the Code." Collier on Bankruptcy, ¶ 301.07 (15th ed.). Thus, "Although section 301 of the Code substitutes 'order for relief' in place of 'adjudication,' the order for relief has the same far-reaching effect." Collier on Bankruptcy, ¶ 301.08 (15th ed.).

One such effect of the order for relief is that it operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . ." 11 USCA § 362 (a) (6). Thus, we observe that at the time of the commencement of this action against defendants, Ellison's bankruptcy petition operated to stay the filing of a lawsuit by the plaintiff against the contractor.

In construing a statute, "[t]he legislative intent prevails over literal import of words. The general scheme and purpose of legislation is the criterion for the proper construction thereof." *Drake v. Thyer Mfg. Corp.*, 105 Ga. App. 20, 22 (3) (123 SE2d 457). The history of the materialman's lien statute "evinces a legislative intent to avoid the harsh result of a materialman being deprived of his lien through no fault of his own by virtue of the bankruptcy of the contractor." *Melton v. Pacific Sou. Mtg. Trust*, 241 Ga. 589, 591 (247 SE2d 76). We hold, therefore, that under the facts of this case, the contractor

was "adjudicated a bankrupt" within the meaning of former OCGA § 44-14-362 (4), now OCGA § 44-14-361.1 (a) (4) and that, therefore, the materialman was relieved from obtaining a judgment against the contractor. The trial court did not err in failing to grant defendants' motion for new trial and motion for judgment notwithstanding the verdict.

2. During the course of the trial, defendants offered testimony concerning payments which defendants made to others to complete the work on their house. In so doing, defendant Velma Faye Reid read from a list of such payments which she compiled. The court interrupted defendant's testimony and the following transpired: "THE COURT: Isn't that the same list that she just read off of here a while ago? THE WITNESS: That was listed on there, yes, sir. THE COURT: Yeah, I think we've been over all this already, haven't we, Mr. Hudson? Didn't she read off all this? I remember Haley Lumber Company and all those things she was reading off of there a while ago — MR. HUDSON: She had — THE COURT: — that little manufactured piece of evidence you gave her to read off of there. MR. HUDSON: Well, I . . . I don't know about that being manufactured evidence, Your Honor. That's —. THE COURT: Recapitulation. Recapitulated evidence, I think you called it. All right, sir, you may proceed. MR. HUDSON: . . . I want to make a motion, if Your Honor please, outside the presence of the jury." The jury retired to the jury room and defense counsel then made a motion for mistrial stating that during the course of the trial the court had made objections and stopped a defense witness from testifying even though plaintiff's counsel had not made any objections. Defense counsel stated further that the court had said, " '[t]hat little manufactured piece of evidence' that I made." Whereupon the court asked the question: "The recapitulation was manufactured, isn't it?" and defense counsel responded: "Yes, sir, but the word manufactured and the inflection that you had in it indicated that it was some sort of a lawyer's trick." The court then stated: "No, . . . I didn't mean to do that. The only thing I was trying to get you to do was not to go over the same thing again." The court overruled the motion for mistrial and the jury was returned to the courtroom. The testimony of defendant Velma Faye Reid continued and was completed. At this point during the course of the trial, the court instructed the jury: "Ladies and gentlemen of the jury, we're going to take a little recess now. . . . I also want to instruct you that before you went out the last time, the Court and counsel for defendant[s] entered into a colloquy concerning one of the exhibits. I want you to disabuse your mind of that colloquy and do not let it enter into your decision in this matter in the least. It was not evidence, simply a colloquy between counsel and the Court and you disabuse your mind of it completely and don't let it enter into your deci-

sion in this case."

Defendants contend that the trial court erred in overruling their "motion for a mistrial following the highly prejudicial [set forth above] comments by the court concerning defendants' evidence" and that the court did not correct itself or give any curative instructions.

Defendants correctly state that it is error for any judge, during the progress of any case, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved. See OCGA § 9-10-7.

In consideration of the totality of the statements in the quoted colloquy and the subsequent curative instructions to the jury by the trial judge, it does not appear from our review of the transcript that the trial court committed harmful error if any error was committed.

We view the trial judge's actions as being motivated within the bounds of his inherent power to supervise the course of the trial and the court's statements during colloquy were not improper expressions of opinion of the evidence in violation of OCGA § 9-10-7.

" 'The trial judge in passing on motions for mistrial has a broad discretion, dependent on the circumstances of each case, which will not be disturbed unless manifestly abused. (Cits.) Unless it is apparent that a mistrial is essential to preservation of the right of fair trial, the discretion of the trial judge will not be interfered with.' *Atlantic C.L.R. Co. v. Smith*, 107 Ga. App. 384 [6] [130 SE2d 355] [1963]." *Firestone Tire &c. Co. v. King*, 145 Ga. App. 840, 843 (244 SE2d 905). Defendants have not borne their burden to show error on appeal. The trial court did not err in overruling defendants' motion for mistrial.

3. The trial court did not err in striking defendants' evidence concerning the testimony which contractor Ellison gave during his bankruptcy proceeding. There was no showing that Ellison was "deceased, disqualified, or inaccessible." OCGA § 24-3-10; *Century Dodge, Inc. v. Mobley*, 155 Ga. App. 712 (1) (272 SE2d 502).

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 6, 1984 —
REHEARING DENIED NOVEMBER 16, 1984

*James E. Hudson, Kenneth Kalivoda, Robert Woodland,* for appellants.

*Jerry N. Neal,* for appellee.