## S01G0498. FEW v. CAPITOL MATERIALS, INC.
### (559 SE2d 429)

FLETCHER, Chief Justice.

We granted the writ of certiorari to consider whether a supplier must sue a contractor before suing the property owner who has discharged the materialman's lien against his property by filing a bond. Because the release of the lien through the filing of a bond does not create a separate action, we hold that the supplier is still required to commence an action against the contractor under OCGA § 44-14-361.1 before suing the property owner on the bond. Since Capitol neither filed a claim against the contractor nor met any of the exceptions that would relieve it from first suing the contractor, we reverse.

Property owner Joseph Few contracted with The Perez Group to build a house. Six days after Perez filed for bankruptcy, it purchased drywall materials from Capitol Materials, a supplier. When Perez failed to pay for the materials, Capitol filed a materialman's lien against Few's property. Few discharged the lien by filing a bond as provided in OCGA § 44-14-364. Capitol then sued Few to collect on the bond without commencing an action against the contractor. The trial court granted summary judgment to Capitol, and the Court of Appeals for the State of Georgia affirmed, distinguishing between an action on the lien and an action to recover on the bond.[1]

1. The Georgia General Assembly has enacted a detailed statutory scheme for creating special liens on real property, including liens of materialmen who furnish materials for the building, repairing, or improving of the property.[2] OCGA § 44-14-361.1 (a) sets out the provisions for perfecting a lien. These provisions require a materialman who has substantially complied with the contract for materials to (a) file a claim of lien in the county where the property is located within three months of furnishing the materials; (b) send a copy of the lien claim to the property owner; (c) commence an action

---

[1] See *Few v. Capitol Materials*, 247 Ga. App. 93 (543 SE2d 102) (2000).

[2] See OCGA § 44-14-361.

against the contractor to recover the amount of the claim within 12 months of when the claim became due; and (d) file a notice of the action with the superior court clerk of the county where the lien was filed so that the clerk can enter information about the lawsuit in county records.[3]

Subparagraph (a) (4) of OCGA § 44-14-361.1 permits the materialman to bring an action directly against the property owner to enforce the lien against the property without "filing an action or obtaining judgment against the contractor . . . as a prerequisite to enforcing a lien against the property" in limited circumstances. A direct action against the owner is allowed when the contractor dies or leaves the state, is adjudicated a bankrupt, or has a contract with the lien claimant requiring that the contractor be paid before the supplier. OCGA § 44-14-364 permits the property owner to discharge the lien on its real estate by filing a bond in the superior court clerk's office.

The legislature has mandated strict compliance with these statutory provisions. OCGA § 44-14-361.1 expressly provides that liens "shall not be effective or enforceable" unless created or declared according to the statute.[4] In addition, this Court has followed the rule that lien statutes in derogation of the common law must be strictly construed in favor of the property owner and against the materialman.[5] The rationale is that there is usually no contract between the owner and supplier. Instead, a "materialman's lien effectively permits the transfer of liability from the person who actually contracted with the materialman for materials to be used in improving real estate to the owner of the improved property."[6]

The issue in this appeal is whether the supplier had to follow the statutory requirement to commence an action against the contractor within 12 months of the claim becoming due before suing the owner on the lien-release bond. Applying the rule of strict construction, we conclude that the property owner's filing of a bond does not relieve the supplier of the necessity of attempting to perfect its lien by filing a claim against the contractor. Instead, we hold that a lien claimant must commence a timely action against the contractor under OCGA § 44-14-361.1 (a) (3) as a prerequisite to suing the owner on the

---

[3] See OCGA § 44-14-361.1 (a) (1)-(3).

[4] See OCGA § 44-14-361.1 (a).

[5] See *U.S. Filter Distribution Group v. Barnett*, 273 Ga. 254 (538 SE2d 739) (2000) (requirement that lien be filed "within three months" not subject to computation of time in OCGA § 1-3-1 (d) (3)); *Palmer v. Duncan Wholesale*, 262 Ga. 28 (413 SE2d 437) (1992) (materialman cannot enforce its claim of lien directly against the real estate because it failed to comply with 14-day notice provision of subparagraph (a) (3)).

[6] See *Palmer*, 262 Ga. at 30.

bond.[7] Contrary to the court of appeals decision, the property owner does not create a new cause of action for the lien claimant by filing a bond under OCGA § 44-14-364.[8] Rather, the bond stands in the place of the real property as security for the lien claimant.[9] Because no new action is created, the lien claimant in an action on the bond must still comply with the statutory requirements for perfecting a lien, with one exception discussed below, and the principal and the surety on the bond are entitled to raise any defense that would have been available as a defense to the lien foreclosure.[10] This ruling means that the lien claimant must first seek to recover monies owed from the contractor, the party with whom it has a contract, before seeking to recover from the property owner, with whom the supplier has no contractual relationship.

In distinguishing between an action on the lien and an action to recover on the bond, the court of appeals relied on a line of cases beginning with *Burgess v. Travelers Indemnity Company*.[11] In that case, the court held that lien claimants who sue to recover on the bond do not have to comply with the notice provision in subparagraph (a) (3) for perfecting the lien.[12] The court reasoned that it would be unreasonable to require the filing of the notice of the lien action as a prerequisite to the suit on the bond since the notice would serve no purpose; the legislature enacted the requirement to protect persons with an interest in the real estate, and the real estate is no longer affected after the bond discharges the lien on the property. Subsequent court of appeals decisions have refused to extend the *Burgess* decision to other procedural requirements in OCGA § 44-14-361.1 (a), including commencing an action against the contractor within 12 months.[13] Similarly, we decline to create an additional exception in this case because requiring the supplier to first file a claim against the contractor before seeking to recover against the owner on the bond is not a futile act but may result in holding accountable the person who originally incurred the debt.

[7] See *Stonepecker, Inc. v. Shepherd Constr. Co.*, 188 Ga. App. 513, 515 (373 SE2d 295) (1988).

[8] See *North v. Waffle House*, 177 Ga. App. 162 (338 SE2d 750) (1985).

[9] See *M. Shapiro & Sons, Inc. v. Yates Constr. Co.*, 140 Ga. App. 675, 679 (231 SE2d 497) (1976) (Smith, J., concurring specially).

[10] See *Roberts v. Porter, Davis, Saunders & Churchill*, 193 Ga. App. 898 (389 SE2d 361) (1989); *Shapiro*, 140 Ga. App. at 677.

[11] 185 Ga. App. 82 (363 SE2d 308) (1987).

[12] Id. at 83; see also *Hardee v. Spivey*, 193 Ga. App. 234 (387 SE2d 430) (1989) (since this action involves a bond, a materialman's failure to file notice of suit is irrelevant); *All Phase Elec. Supply Co. v. Foster & Cooper, Inc.*, 193 Ga. App. 232, 233 (387 SE2d 429) (1989) (materialman's failure to file notice under § 44-14-361.1 (a) (3) does not bar recovery on its suit on the bond).

[13] See *Hardee v. Spivey*, 193 Ga. App. at 235; *Stonepecker*, 188 Ga. App. at 514.

2. In this case, Capitol did not file an action or obtain a judgment against the contractor before suing the property owner on the bond. In addition, Capitol did not meet any of the exceptions under subparagraph (a) (4) that would have relieved it of obtaining a judgment against the contractor. Although Capitol argues that the contractor's intervening bankruptcy falls within the exception of a contractor who has been adjudicated a bankrupt, this case is different from previous cases in which the contractor has filed for bankruptcy. In *Reid v. Harbin Lumber Company*,[14] where the court held that the contractor was "adjudicated a bankrupt," the contractor's filing of the bankruptcy petition operated to stay the supplier's filing of a lawsuit against the contractor. In this case, the supplier's claim against the contractor was not included in Perez's bankruptcy proceeding since the debt arose six days after Perez filed its bankruptcy petition.[15] Because Capitol did not commence a timely action against Perez before proceeding against Few on his bond or fall within any of the exceptions in OCGA § 44-14-361.1 (a) (4), it was not entitled to summary judgment.

*Judgment reversed. All the Justices concur.*

DECIDED JANUARY 14, 2002 —
RECONSIDERATION DENIED FEBRUARY 25, 2002.

*King & Croft, Terrence L. Croft*, for appellant.
*Rachelson & White, Ira L. Rachelson, Lesley Annis*, for appellee.

---

[14] 172 Ga. App. 615 (323 SE2d 845) (1984).
[15] See 11 USC § 362 (2) (bankruptcy petition operates as a stay of claims that arise before the filing of the petition).
[1] The crimes occurred on January 14, 2000, and the grand jury returned a true bill of indictment on July 12, 2000. Appellant and McClellan were jointly tried November 13-14, and 16-17, 2000. The jury verdicts were filed November 20, and appellant's sentences were filed on November 28. Appellant filed a notice of appeal on December 14, 2000. The appeal was docketed in this Court on May 16, 2001, and submitted for decision on the briefs.